[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTIONS FOR MODIFICATION OF JUDGMENT OFDISSOLUTION
BACKGROUND
On February 18, 1992, the marriage of the parties was dissolved by a judgment of this court (Ballen, J.). As part of that judgment, the court ordered the defendant-husband to pay to the plaintiff-wife the sum of $1.00 per year as periodic alimony. The defendant was also ordered to pay the sum of $150.00 per week as support for the two minor sons of the parties. Custody of a third child, the daughter of the parties, was awarded to the defendant. The defendant was also ordered to maintain medical insurance for the benefit of the three minor children as it may be available to him through his employment and he was ordered to do whatever was necessary for the plaintiff to obtain medical insurance under COBRA through his employment.
By her motion of December 31, 1992, the plaintiff sought a modification of the support and alimony orders entered as part of the judgment of dissolution. On December 3, 1993, the court (Petroni, J.) denied the plaintiff's motion to modify, and he subsequently affirmed that decision when he denied the plaintiff's Motion for Reconsideration on December 23, 1993.
On November 6, 1995, the plaintiff filed a Motion to Reargue the Motion for Modification, claiming the defendant had committed a fraud on her and on the court regarding his assets at the time of the hearing on said motion (November 18 and 19, 1993).
On November 28, 1995, Judge Douglas Mintz granted the plaintiff's Motion to Reargue and reopened the post-judgment orders. Thereafter the matter was assigned to the undersigned for hearing on the Plaintiff's Motion for Modification and eight other motions related to the judgment of dissolution, including the defendant's Motion for Contempt.
Over the course of 14 hearing dates or parts thereof, this court heard evidence and testimony concerning those nine CT Page 289 post-judgment motions of the parties. The parties each represented themselves pro se. Although they each did a somewhat competent job of presenting the issues, a considerable amount of wasted and unnecessary time was spent on irrelevant and vitriolic issues which illustrated the tremendously acrimonious relationship which exists between the parties. The court notes that at times both the plaintiff and defendant lacked credibility with the court, often to the breaking point.
Several weeks after the conclusion of the evidence and testimony, while in the midst of rendering this memorandum, the court found itself compelled to summon both of the parties into court to discuss on the record the possible need for the court to recuse itself as a result of several post-hearing ex parte communications from the plaintiff to the court. The plaintiff did not appear for said hearing citing travel expense and poor health. The defendant did appear and informed the court that he did not seek to have the court recused despite those communications.
The court has considered all the criteria of Sections 46b-81,46b-82, and 46b-84, Conn. General Statutes, the applicable child support guidelines as well as the evidence and applicable case law. The court is not obligated to make express findings on each of those statutory criteria. Scherr vs. Scherr, 183 Conn. 366,368.
Having considered all of the evidence and testimony presented by the parties, the court makes the following findings and conclusions.
THE MOTIONS
The following post-judgment motions were heard by the undersigned: (295) Plaintiff's Motion for Order; (299) Plaintiff's Motion for College Expenses; (300) Plaintiff's Motion for Payment of Medical Expenses; (302) Plaintiff's (11/15/95) Motion for Contempt; (305) Plaintiff's (1/22/96) Motion for Contempt; (306) Plaintiff's Motion for Support; (307) Plaintiff's Motion to Order Defendant to Sign Waiver of I.R.S. Records; (308) Plaintiff's Motion for Education Payment For Sons; (312) Defendant's Motion Modifying Support.
THE FACTS
CT Page 290
As previously noted, the marriage of the parties was dissolved on February 18, 1992. Since the date of that judgment they have filed approximately eighty (80) motions addressed to that judgement, nine of which are the subject of this memorandum.
Much of the relief sought in those 80 or so motions relates to efforts by the plaintiff to require the defendant to comply with his obligations pursuant to the judgment — more specifically, his obligations to pay alimony and support, including medical insurance and educational expenses.
The defendant, as noted, is currently obligated to pay to the plaintiff alimony in the amount of $1.00 per year and support in the amount of $150.00 per week for each of their two sons, who reside with the plaintiff.
Those monetary orders were entered on February 18, 1992, and were based upon the defendant's financial affidavit of that date in which he reported that he was self-employed and that his only source of income was a "gas/oil" dividend in an average weekly amount of $33.02. It also indicated that the total cash value of his assets was $623,709.00 and that his total liabilities amounted to $1,107,786.00. According to the testimony, the defendant has been able to pay that current child support order — $150.00 per week for each of his two sons with little or no arrearage to date.
On September 27, 1995, the defendant executed a financial affidavit indicating that he was "unemployed as of 7/15/95" and that his average weekly income was $14.00 from "Res.Dev Ptnrs"." His total cash assets were listed as $34,853.71 and his liabilities were listed as $105,000.00 (Plaintiff's Ex. 9).
On February 29, 1996, the defendant executed a financial affidavit indicating that his net weekly income was $14.00 and his total cash assets were listed as $17,055.00 and his liabilities were listed as $225,900.00 (Plaintiff's Ex. 12).
On May 16, 1996, the defendant executed a financial affidavit indicating that his average net weekly income was $14.00 and his total cash assets were listed as $19,650.00 and his liabilities were listed as $258,900.00 (Plaintiff's Ex. 13). Again, he described himself as "unemployed as of 7/15/95." CT Page 291
Notwithstanding the aforementioned financial affidavits, evidence and testimony was elicited during the course of the proceedings to permit the court to find that the defendant's income since the date of the dissolution has been substantially greater than the amounts indicated in those affidavits.
The basis for all of the motions before the court is the claim by the plaintiff that the defendant has an earning capacity which he has purposely failed to exploit in order to prevent her from obtaining what she considers to be fair and appropriate orders of support and alimony. To a considerable extent, the court agrees with the plaintiff.
In the later years of the parties' marriage, the defendant's income averaged somewhere between $80,000.00 and $150,000.00. In 1983 and 1984, according to the defendant's own testimony May 17, 1996, his income went to $250,000.00 and in 1985 it was approximately $275,000.00 and in 1986, about $400,000.00. In 1987 his income was approximately $375,000.00, and in 1988 it was approximately $300,000.00, according to the defendant. From 1989 on, the defendant testified his income was reduced considerably — to the point in the year from September 1991 to October 1992, he was unemployed. In 1993 his income was at least $150,000.00.
He further testified that in 1994 he received approximately $400,000.00 from bcp, Inc. and that in early 1995, he earned $18,000.00 in two months. However, on or about July 15, 1995, he became "statutorily disqualified" from securities trading when he was convicted for forgery. Since that conviction, the defendant has consistently described himself as "unemployed" and has reported an ever-increasing personal debt — due largely to loans he has received from his current wife and his mother.
The defendant further testified that in 1995 he only earned approximately $18,000.00, due to the fact that in July of 1995 he lost his broker's license and that since that time he has earned about $14.00 every thirteen weeks as per his financial affidavits.
The court notes that during 1991-1992, when the defendant testified he was unemployed, the plaintiff was pursuing about a dozen post judgment motions addressed to the financial orders in this dissolution case. The approximate total of the defendant's gross income since the dissolution in 1982, using those figures, CT Page 292 is roughly $2,418,000.00. That is accepting the defendant's testimony that he has had virtually no income since July 1995. At no time since the dissolution has the defendant's support obligation been increased.
The court finds that as to that earning period, the combined income of the parties far exceeds all support guideline criteria. That combined income is almost completely provided by the defendant.
While the defendant has been without the requisite license to sell commodities since July 1995, he has not sought employment in any other field. He has maintained an association with former colleagues in the commodities business as little more than an unpaid investment solicitor. The court finds his testimony regarding those facts as less than credible.
While acting as an unpaid investment solicitor for Merit Capital Associates, the defendant issued a trade letter dated January 12, 1996, in which he described in detail his educational and business background and in which he held himself out as "Managing Director" on the letterhead of Merit Capital Associates. He further described himself as the creator of Avanti Emerging Market Fund and claimed that "For the past 5 years I have been actively trading Emerging Market Euro-bond debt . . . dealing with every major Euro-bond market maker . . . work[ing] exclusively for my clients, identifying and locating the best values in the marketplace. "(Plaintiff's Ex. 1). That would not likely be the work of an unpaid solicitor of investments.
The defendant testified that while he did put in regular hours at the offices of Merit Capital, and did describe himself as "Managing Director", he did not receive a regular salary or commissions and performed that work only with the hope and expectation that if sufficient funds could be solicited, the fund might at some future date pay big financial rewards. Further testimony elicited concerning his compensation seriously contradicts that claim.
On June 4, 1996, the court heard testimony from Randall Pike, an officer with bcp, Inc. to the effect that the defendant earned as gross commissions of approximately $356,298.91 from that company between January and March 1995 (Plaintiff's Ex. 20). He further testified that the defendant earned between $250,000.00 and $300,000.00 from bcp, Inc. in the "emerging markets field" CT Page 293 between January 1, 1994 and December 31, 1994 (Plaintiff's Ex. 21).
Mr. Pike also testified that the defendant started to receive medical insurance benefits on or about December 1, 1993.
In an application for medical benefits dated June 23, 1994, the defendant, himself, reported his annual earnings to be $75,000.00 (Plaintiff's Ex. 22).
In response to inquiry by the court on May 17, 1996, the defendant testified that in the months of September, October and November 1993, he earned approximately $150,000.00 as a draw from Condor Securities.
The court recalls for the record the fact that this same individual listed his total net weekly income on his financial affidavit of February 18, 1992, the date of dissolution, as being "$33.02" from "gas/oil."
Having observed the defendant in his performance as a prose litigant in the instant action, the court concludes that the defendant possesses the intelligence, demeanor, and personality to excel in any professional capacity involving sales — and not necessarily in the area of bonds or securities.
The defendant is an articulate, engaging and intelligent person who carries himself with a great deal of self-confidence. It is readily apparent that he has the ability to earn a substantial income in a number of fields. To put it another way, the defendant, in this court's opinion, could sell jet-skis to Eskimos if he made half an effort.
This court has held in numerous cases that orders of alimony and support can be based on earning capacity. The defendant herein is found to have consistently avoided obtaining employment in his field of expertise after having lost his broker's license in July 1995, following his conviction for forgery. While that conviction caused him to be divested of his broker's license and the high income it provided to him, he remained extremely qualified for numerous other professional sales positions that require no such license. Instead, if he is to be believed, he chose to volunteer his time and talents to a venture that earned him absolutely no income. CT Page 294
A person's earning capacity is a not a sum which someone can theoretically earn, but an amount a person can reasonably be expected to earn considering his vocational skills, employment, ability, age and health. Lucy vs. Lucy, 183 Conn. 230 (1981).
The court can use earning capacity as a basis for alimony and support when it has specific evidence of a parties' prior earnings and specific evidence that he or she had avoided obtaining employment in his field of expertise. Hart vs. Hart,19 Conn. App. 91 (1989).
A court may, pursuant to guidelines deviation criteria, base its financial award on both the present and potential earning capacity of the parent. Carey vs. Carey, 29 Conn. App. 436, 437
(1992).
The court can base its alimony award on the defendant's earning capacity and not necessarily on his stated desires regarding employment. Vandal vs. Vandal, 31 Conn. App. 561.
With respect to financial awards in a dissolution action, great weight is given to the judgment of the trial court because of its opportunity to observe the parties and the evidence. Gallovs. Gallo, 184 Conn. 36 (1981).
Where an obligor offers no reason why he had not sought new employment nor what employment, if any, was available to him, the court can conclude that the movant has not proven a substantial change of circumstances to justify altering the prior determination of the case. Logan vs. Logan, 13 Conn. App. 298
(1988).
The defendant herein is found to have an earning capacity of no less than $75,000.00 per year, based upon his age, health, education, professional experience and skill at sales and marketing. While the defendant may be precluded from employment which requires a license or the ability to be bonded, that fact does not prevent him from seeking and obtaining numerous other professional opportunities.
The plaintiff offered additional evidence and testimony in an attempt to establish that the transfer of title of the marital residence located at 1123 Sasco Hill Road in Fairfield was a "sale" of that property by the defendant to his stepfather, Everett C. Reed. (See Plaintiff's Ex. 23 and Ex. 24). CT Page 295
The court finds that the transfer complained of by the plaintiff was part of a discharge in bankruptcy awarded to Richard Thomas Cooke, the debtor in United States Bankruptcy Court Case No. 92-54150. This court takes judicial notice of that judgment and gives it full faith and credit.
The plaintiff also offered evidence and testimony to establish that the defendant has breached ARTICLE 9 (MEDICAL INSURANCE AND RELATED EXPENSES) of the parties' Separation Agreement by his failure to provide medical insurance coverage for the parties' two sons, Richard and Alexander.
That evidence included testimony by Patricia Barton, Aetna Health Plans Division Manager. She testified that the coverage obtained by the defendant listed both sons as residents of Fairfield, Connecticut, and was coverage which provided only emergency medical care to them in any state other than Connecticut. The evidence was unrefuted that both young men are permanent residents of the State of Washington and have been since the date of dissolution. (See Plaintiff's Ex. 3 and Ex. 4). Ms. Barton further testified that the coverage arranged for by the defendant did not include dental care for either son.
Based on the foregoing, the court finds that the defendant has failed to meet his obligation under the Separation Agreement to provide medical insurance for the parties' minor sons.
The plaintiff further argues that the defendant has failed to comply with his obligation to convert the plaintiff's health insurance coverage to an individual policy or otherwise provide to her with an individual policy providing her with the same medical benefits available to her prior to the dissolution of their marriage. The court was provided with no evidence or testimony that he has complied with that obligation which became an order of this court when the parties' Separation Agreement was incorporated into the February 18, 1992 judgment.
Having made those findings, the court turns its attention to the defendant's obligations pursuant to the February 18, 1992 dissolution judgment and, more specifically, to the relief sought by the plaintiff in the following motions:
(#295) PLAINTIFF'S MOTION FOR ORDER
CT Page 296
By her Motion for Order (#295), the plaintiff seeks an order that the defendant execute and deliver to the plaintiff authorization for his bank records "in order to have a fair hearing on all of the pending issues in this case." The plaintiff elected to proceed to a hearing on the aforementioned motions without first pursuing said motion. For that reason the said motion is hereby DENIED.
(#299) PLAINTIFF'S MOTION FOR PAYMENT OF COLLEGE EXPENSES
ARTICLE 10 (Summer Camp and Education Expenses) of the parties Separation Agreement dated February 18, 1992 (hereinafter referred to as "the Agreement"), Paragraph 3 provides, in part, that "should the husband have the ability to do so, the husband agrees he shall pay all expenses for the children's . . . undergraduate college education."
Paragraph 4 of ARTICLE 10 provides that this obligation of the defendant "shall be subject to the child being in full timeattention on a continuous basis . . . and is matriculated in a course of study leading to an undergraduate degree at an accredited college or university . . ." (EDP. added). Based on the evidenced elicited, the court finds that no one of the parties' three children is currently so enrolled as to meet the prerequisites of that provision of The Agreement, nor has any one of their children been so enrolled since the date of the dissolution of the parties' marriage. The motion is denied without prejudice for the plaintiff to compel such payments and for sanctions when and if he should refuse to pay them at such time when one or more children are so enrolled and he (the defendant) has the ability to pay.
(#300) PLAINTIFF'S MOTION FOR PAYMENT OF MEDICAL EXPENSES
See (#305) MOTION FOR CONTEMPT — MEDICAL EXPENSES BELOW.
The court, having no evidence before it that the defendant has complied with his obligation in the Separation Agreement which became part of the judgment, hereby orders the defendant to reimburse the plaintiff for all medical expenses which she has incurred since February 18, 1992, to the extent that those bills would have otherwise been provided for had the requisite insurance coverage for the plaintiff been in force and effect. The plaintiff is to provide the defendant with information concerning any other medical insurance which was or is currently CT Page 297 in effect at the time such medical expenses may have been incurred by the plaintiff. The reimbursement shall be only for unreimbursed out-of-pocket medical expenses incurred by the plaintiff. Notification of such claims shall be made to the defendant in the manner set forth regarding childrens' medical expenses, below.
(#302) PLAINTIFF'S MOTION FOR CONTEMPT (DATED 11/15/95)
By this motion, the plaintiff seeks to have the defendant found in contempt of court for his failure to pay to her the sum of $72,500.00 due to her with interest from May 1, 1992, plus attorney's fees and expenses incurred by the plaintiff to collect that sum. The basis of the plaintiff's claim is the provision in paragraph 3(c) of ARTICLE 11 of the parties' Separation Agreement ("MARITAL RESIDENCE") which provides that "upon the sale of [that] premises the defendant would pay that sum to the plaintiff from the "net proceeds" of such sale.
For the reasons stated in the facts as set forth hereinabove, the court finds that the plaintiff has failed to establish that the transfer of the property to Everett Reed in bankruptcy was not a bona fide, involuntary transfer of title from the parties.
For that reason the relief sought herein is denied.
(#305) PLAINTIFF'S MOTION FOR CONTEMPT FOR FAILURE TO PAYCHILD SUPPORT AND MEDICAL BILLS, AND FAILURE TO PROVIDEINSURANCE FOR YEARS TO MINOR CHILDREN.
For the reasons stated hereinabove, the court finds that the defendant has failed to provide adequate medical insurance coverage for the plaintiff and the parties two sons who have resided with her since the date of the dissolution. The coverage which he professes to have provided has not been sufficient to provide the coverage which was anticipated and called for in ARTICLE 9 (MEDICAL INSURANCE AND RELATED EXPENSES) of the parties Separation Agreement.
The defendant is found to be solely liable, pursuant to ARTICLE 9, Paragraph 6, for all medical expense incurred by or on behalf of the [said] children prior to their emancipation to the extent such medical expense would have been reimbursed by insurance had the defendant provided said insurance coverage. CT Page 298
The plaintiff is to submit to the defendant at his residence by certified mail, return receipt requested, written claim for reimbursement for any and all out-of-pocket medical expenses incurred by the plaintiff on behalf of herself or her two sons from February 18, 1992 to date. A copy of all such claims shall be mailed to the Chief Clerk of this court for inclusion in this file. The defendant's obligation to reimburse the plaintiff shall be limited by the terms of ARTICLE 9 — including termination of said obligation for each of the parties minor son "until emancipation." The plaintiff shall advise the defendant of any medical insurance which has or may be furnished to her from any other source.
The defendant is to furnish this court and the plaintiff with proof of insurance coverage for said minor children within 60 days of the date of this order.
A dispute concerning the plaintiff's claims for reimbursement or concerning the defendant's compliance with this order shall be submitted to a judge of this court for further proceedings.
As further consequence of this finding of contempt, the defendant is ordered to pay to the plaintiff the sum of $500.00 within 60 days of the date of this order.
(#306) PLAINTIFF'S MOTION FOR SUPPORT OF MINOR CHILDREN
Having previously found that the defendant has an earning capacity of at least $75,000.00, and having found that the defendant, since the date of the dissolution, has earned roughly $2,418,000.00, the court grants the plaintiff's motion to modify upward the defendant's obligation for the support of his minor children. The court finds that a fair and appropriate amount of child support from February 1982 up to July 1995 is $250.00 per week for each of his children. The difference between the amount which he paid ($150.00 per week per child) and the $250.00 per week per child obligation found herein is found to be $100.00 per week per child or $200.00 total per week.
By virtue of the November 28, 1995 order of Judge Douglas Mintz, said upward modification of the defendant's supportobligation is hereby made retroactive to the date of dissolution — February 18, 1992 to July 15, 1995. Due to the retroactive application of this order, the court finds that the defendant is, de facto, in arrears for that period of time at the rate of CT Page 299 $200.00 per week. The defendant's support obligation from July, 1995 to date shall remain at $150.00 per week per child. It is not based upon the actual earnings of the defendant, but rather on the defendant's earning capacity as set forth hereinabove.
The defendant is ordered to pay to the plaintiff the total sum of $500.00 per week ($250.00 per week for each of two sons) until that arrearage has been paid, or until further order of this court. The defendant is to pay the arrearage portion of that figure even after each of the children attains majority — until it is paid in full.
In view of the sizeable arrearage found as a consequence of this order, the court directs that the total obligation be referred to the Office of Support Enforcement for determination and collection. All future issues concerning the defendant's support obligation shall be referred to that office. The court orders that the total arrearage be ascertained by that office and reported to a judge of the Superior Court, if necessary, for orders concerning a schedule of payments to the plaintiff through the Bureau of Support at the rate of $500.00 per week — $250.00 per week for each of his two sons.
(#307) PLAINTIFF'S MOTION RE: IRS WAIVERS
The defendant having stipulated to the relief sought herein on May 8, 1996, during the hearings on these motions, the issue is moot and the motion is denied.
(#308) MOTION FOR EDUCATION PAYMENT FOR SONS
See #299 Motion for Payment of College Expenses, above.
(#312) DEFENDANT'S NOTION FOR MODIFICATION
In view of the foregoing findings concerning the defendant's earning capacity and the modification upward of the defendant's support obligation, this motion is denied.
JOSEPH W. DOHERTY, J.